UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

US INCOME PARTNERS, LLC,

    Plaintiff,

v.                                                                                        CASE NO. 8:20-cv-1020-SDM-SPF

ACORE CAPITAL MORTGAGE, LP,

    Defendant.
_____/

**ORDER**

    In May 2018 and in exchange for a first mortgage, Regions Bank, not a party to this action, lent about $35 million to a residential apartment project that the parties call "the Florida property." The borrower and the owner of the Florida Property is Mystic Pointe, a limited liability company and a subsidiary of Cypress Holdings, another limited liability company. On the same day, Cypress Holdings borrowed from US Income Partners, the plaintiff, $10 million in the form of a mezzanine loan, secured by the memberships in Cypress Holdings. Mystic Pointe in late 2019 re-financed the Florida property by borrowing about $41 million from Acore, the defendant, which by assignment, modification, and restatement succeeded Regions as the first mortgagee.

    According to the amended complaint, Cypress Holdings (1) "advised" US Income Partners that, contemporaneous to the re-financing, Cypress Holdings would pay the entire principal amount of the mezzanine loan and (2) "requested" that US

Income Partners "provide a payoff statement." (Doc. 16 at 8) The complaint alleges neither how nor through whom Cypress Holdings "advised" US Income Partners of the prospective payoff or "requested" a payoff statement.

The core of this controversy appears in paragraphs 36–39 of US Income Partners' amended complaint:

> 36. On December 18, 2019, through counsel, US Income Partners provided payoff instructions for the Note. Concurrently with the payoff instructions, US Income Partners provided Cypress [Holdings'] counsel with original documents authorizing the termination of the Assignments and Guaranty ("Termination Documents"), which it instructed must be held in "escrow pending receipt of the payoff amount pursuant to the enclosed payoff letter." (Emphasis added.) The enclosed payoff letter provided for Cypress [Holdings] to transfer the funds to a US Income Partners bank account held by M&T Bank in Rochester, New York.
>
> 37. US Income Partners authorized the termination [sic?] of the Termination Documents only in reliance on Acore's representation in the Closing Statement that Cypress [Holdings] would first pay off US Income Partners' loan in full.
>
> 38. Although US Income Partners had provided payoff instructions, Cypress [Holdings] failed to make any payment to US Income Partners.
>
> 39. Instead, on January 13, 2020, Cypress [Holdings] contacted US Income Partners to request an updated payoff statement through January 15, 2020.

In the motion to dismiss, Acore describes this episode with a somewhat different emphasis:

> Acore funded the Acore Refinance Loan and the closing agent disbursed proceeds from it, in the amount of $33,571,315.77, to Regions Bank for an assignment of the First Mortgage (the "Regions Assignment") (Ex. B). In addition, Proceeds from the

> Acore Refinance Loan, in the amount of $10,105,434.43, were disbursed to pay off the Mezzanine Loan. However, those funds were improperly diverted and stolen by an unknown third party. (¶ 54).

(Doc. 29 at 4)

The complaint and other papers, including the transactional documents, seem to establish that US Income Partners (1) lent $10 million to Cypress Holdings, (2) thought (the enforceable commitment on which this thought was based remains unclear) Cypress Holdings would repay the loan (the enforceable source of Cypress Holdings' obligation, if any, to pay is unclear), (3) issued to a closing agent documents that released and acquitted Cypress Holdings upon payment of the $10 million loan, and (4) realized after the transaction closed that US Income Partners' release and acquittal of Cypress Holdings was delivered but that the expected $10 million had not arrived in US Income Partners' account at M&T Bank. In other words, the re-financing occurred, but US Income Partners denies receiving the $10 million. Acore blames "an unknown third party," whose means of access to the money remains unspecified. Neither the parties' respective lawyers, if any, nor a closing or other disbursing agent is a defendant. No allegation identifies who took the missing $10 million or where the money resides now.

Although holding a promissory note collateralized to the extent of the memberships in Cypress Holdings, US Income Partners sues Acore in Count I for a declaratory judgment, in Count II for tortious interference with a contract, in Count III for slander of title, and in Count IV for breach of a contract, a claim based

US Income Partners putative status as a third-party beneficiary. Acore moves to dismiss each count. Given the state of the record, including the complaint (much heat, little light), the motion to dismiss (more light, less heat, but still somewhat opaque), and the response (less heat than the complaint but still insufficient light), resolving with confidence the array of issues presented by the parties is a dicey proposition.

***************

Acore moves to dismiss (Doc. 29) Count I and insists that Regions and Mystic Pointe are required and indispensable parties. Fully re-paid long ago, Regions appears to retain no interest of any kind in these proceedings. Mystic Pointe's ownership of the Florida property is not at issue. The entanglements of a parent usually interest a subsidiary in fact but usually not in the contemplation of the law.

Acore's motion under Rule 12(b)(7) to dismiss Count I (Doc. 29) is, based on the present record, **DENIED**.

***************

Acore moves to dismiss Count I, a claim for declaratory judgment, and argues that "none of [US Income Partners'] allegations constitute a legally cognizable basis to eliminate Acore's rights in the Florida property," which is the declaration the complaint requests. Acore's assertion is little more than a (perhaps correct) prediction that US Income Partners will lose on the merits of Count I. But an argument on the merits is not a refutation of the claim that the parties' respective

- 4 -

rights require a legal and binding determination.

Next, Acore argues that US Income Partners' remedy in the event of a breach of the promissory note from Cypress Holdings is confined to foreclosing on the designated collateral (the memberships in Cypress Holdings) and excludes any resort to, or rights in, the Florida property. This argument partakes of a "lack of standing" argument to the effect that US Income Partners is a stranger to the transaction between Acore and Mystic Pointe except to the indirect extent of US Income Partners' understandable concern about maintaining the value of the memberships in Cypress Holdings, a value presumably affected directly by the financial condition and value of Mystic Pointe and Mystic Pointe's assets. But "understandable concern" alone is not an enforceable legal interest.

Sections 16(f) and (j) of the $10 million promissory note (Doc. 16-1 at 5) (and perhaps another provision in this or another document) seem to trigger a default of the note upon a material adverse change in Cypress Holdings' "financial condition" and upon:

> (j) the filing of any lien or other encumbrance against or the future mortgaging of (i) the real property known as Cypress Pointe Apartments located at 2670 Aventura Boulevard, Lutz, FL 33558 and or (ii) any real property owned by Borrower or (iii) any other real property owned by any limited liability company or other entity in which Borrower has an ownership interest (collectively, the "Real Property") . . . .

In other words, according to the promissory note, a new lien or encumbrance on the Florida property constitutes a default (assuming the re-financing created a new lien and not merely a successor to the existing lien) and avails US Income

- 5 -

Partners of access to the collateral, the memberships in Cypress Holdings. However, quite a gap remains between a creditor's resort to collateral after default and a right to void, vacate, rescind, or the like a transaction between or among third parties, whose arrangement, to which US Income Partners is a stranger, triggered the default.

A comparable assessment applies to Acore's (quite plausible) arguments about Section 697.04, Florida Statutes, and any right, claimed by Cypress Holdings and based solely on an interest in collateral, to approve business or other transactions by Cypress Holdings. But to contend that Acore might prevail on the merits is not to contradict US Income Partners' claim that the parties' respective legal rights require determination.

Again, Acore's motion to dismiss Count I is, based on the present record, **DENIED**.

***************

Acore moves to dismiss Count II, which undertakes to allege tortious interference by Acore in the contract between US Income Partners and Cypress Holdings. The elements of the claim are mostly agreed by the parties, but the parties disagree on the sufficiency of the complaint to allege the elements.

First, Acore insists correctly that words and phrases such as "gross negligence" and "reckless disregard" are legal conclusions that count for nothing in assessing the sufficiency of a claim. For example, negligence is probably pleaded sufficiently by alleging that "A drove 85 miles per hour through a school

zone during school hours and hit B, a pupil, as she was crossing the street" but pleaded insufficiently by alleging that "with gross negligence and reckless disregard for safety, A injured B." Alleging the elemental facts supplies the difference.

Second, US Income Partners alleges the occurrence of a real estate refinancing in which US Income Partners was a participant to the extent of issuing documents to accept concurrent payment of an outstanding loan of about $10 million. Long after the transaction closed, the loan apparently remains unpaid; the reason for, the means of, and the beneficiary of the non-payment remain unspecified. From an alleged failure to receive the $10 million, US Income Partners suggests that a disinterested third party can infer directly, rather indirectly by a series of impermissibly compounded inferences, a claim for tortious interference. Also, in the response Acore notes:

> In fact, US Partners alleges that Acore made its loan to Mystic Pointe so that it could pay off the Mezzanine Loan with US Partners (¶ 33), which is very different than alleging Acore made the loan with the specific intent of procuring a breach. Accordingly, US Partners' allegations simply do not state any basis for the "intentional or unjustified interference" required to state a claim.

Who did what to whom and why and who, if anyone, is liable to whom is likely unknowable until the fate of the $10 million is known or, at least, until sufficient facts — not merely shrill accusations — emerge to reveal who, if anyone, is the malefactor in this unusual transaction. In any event, no tortious interference is alleged.

Acore's motion to dismiss Count II is, based on the present record, **GRANTED**, and Count II is **DISMISSED**.

**************

Count III undertakes a claim for slander of title that derives from, and depends on, the vitality of US Income Partners' claim that the re-financing by which Acore succeeded to Regions breaches the Cypress Holdings promissory note and is — as a consequence of that breach — void. In US Income Partners' view, the alleged voidness results (1) in Acore's "having no rights in the property" and (2) in a slander of title because of the re-financing documents filed in the public record.

As Acore argues, US Income Partners lent money to Cypress Holdings and received a promissory note secured by the LLC's memberships, but US Income Partners has no ownership interest in the Florida property. For this and the other reasons stated by Acore, the motion to dismiss Count III is, based on the present record, **GRANTED**, and Count III is **DISMISSED**.

**************

Based on US Income Partners presumed status as a third-party beneficiary of the modification agreement, Count IV attempts to allege a claim against Acore either for Cypress Holdings' failing to pay the $10 million or Acore's failing to ensure the payment of the $10 million. However, as Acore notes in the response, the modification includes no provision that commits either Acore or Cypress Holdings

to pay the $10 million to US Income Partners and satisfy the debt. More is required before US Income Partners can sustain a claim as a thirty party beneficiary.

For this and the other reasons stated by Acore, the motion to dismiss Count IV is, based on the present record, **GRANTED**, and Count IV is **DISMISSED**. US Income Partners may amend the complaint no later than **APRIL 23, 2021**.

ORDERED in Tampa, Florida, on April 5, 2021.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE